IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 5:12-CV-00157

| | |
|---|---|
| Carolyn Porter,<br><br>        Plaintiff,<br><br>v.<br><br>Wake Technical Community College,<br><br>        Defendant. | **Complaint and Demand for Trial by Jury** |

**Now comes** the Plaintiff, Carolyn Porter, by and through counsel and complaining of the Defendant, Wake Technical Community College (hereinafter, "Wake Tech") and alleges the following to be true:

## INTRODUCTION

1. Each paragraph in this Complaint incorporates all others.

2. This case concerns Defendant's failure to provide reasonable accommodation to and discrimination against Plaintiff, as well as Defendant's retaliation against Plaintiff, which have resulted in physical and economic injury to Plaintiff as well as other damages.

3. This case is brought under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112 and Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203.

4. Plaintiff also brings a claim of Intentional Infliction of Emotional Distress under North Carolina state law.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff is a citizen and resident of Harnett County and is neither an infant nor an incompetent.

6. Wake Tech is a community college which, upon information and belief, is a political subdivision or instrumentality of the State of North Carolina per N.C.G.S. § 115D.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112 and Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203.

8. This Court may properly assert supplemental jurisdiction of all state law claims contained herein under 28 U.S.C. § 1367.

9. Venue is proper in the Eastern District of North Carolina, Western Division, because Defendant is located in this district within the meaning of 28 U.S.C. § 1391 and a substantial part of the acts or omissions giving rise to this Complaint occurred in this district.

10. Plaintiff timely filed a charge with the Equal Opportunity Employment Commission while still employed with Wake Tech and was issued a Notice of Right to Sue on December 21, 2011, giving her 90 days from its receipt to initiate a lawsuit.

11. This Notice of Right to Sue was received by the undersigned attorney on December 28, 2011.

12. This Complaint, having been filed on or before March 27, 2012, is therefore timely and made after exhaustion of all necessary administrative remedies.

## FACTUAL ALLEGATIONS
### Plaintiff's Disability and Reasonable Accommodations

13. Plaintiff is a 43-year-old woman suffering from fibromyalgia, a syndrome characterized by long-term, body-wide pain and tenderness in the joints, muscles, tendons, and other soft tissues, as well as fatigue, sleep problems, headaches, depression, and anxiety.

14. Plaintiff also suffers from chronic myofacial pain, Vitamin D deficiency, Vitamin B deficiency, seasonal affective disorder, immobility issues, occipital nerve damage, and other medical issues (hereinafter referred to collectively as "Plaintiff's ailments").

15. Plaintiff's conditions require various reasonable accommodations including, but not limited to, exposure to sunlight, an altered or reduced work schedule, frequent breaks for rest and recuperation, and allowances for coping mechanisms such as a desk area maintained in the manner in which she is best able to access her files.

16. Plaintiff makes frequent, necessary visits to her physician for treatment of the symptoms associated with her ailments.

17. Plaintiff occasionally does not know of the necessity for a visit to her physician until the rapid flare-up of one of these symptoms, leaving her short warning prior to making a doctors' visit.

### Plaintiff's Basic Employment History with Wake Tech

18. Plaintiff began employment at Wake Tech in April 2005.

19. At all times during Plaintiff's employment, Plaintiff was able to and did perform her essential job functions with reasonable accommodations.

20. Plaintiff was involuntarily terminated from her employment at Wake Tech on or about September 20, 2011.

21. While employed with Wake Tech, Plaintiff applied for and received Family Medical Leave in consecutive one-year intervals beginning November 5, 2008.

22. Because of the frequent onsets of illness and required trips to the physician, Plaintiff was often forced to arrive to work late or to take days off, as allowed by her Family Medical Leave.

23. At all times when she became aware that she would be late to or absent from work, Plaintiff made her best efforts to notify her relevant superiors.

24. Plaintiff often contacted her superiors to notify them of these incidents of tardiness or absence despite being fatigued, in extreme pain, or heavily medicated.

25. At all times when Plaintiff was tardy to or absent from work, Plaintiff made her best efforts to give regular status updates to her superiors at two-hour intervals to inform them when she would be available for work, if known.

26. Plaintiff often made these updates despite being fatigued, in extreme pain, or heavily medicated.

27. Plaintiff's position at the time of hire was Office Assistant I, a clerical position in the Enrollment and Records Department (since changed to Student Records, hereinafter referred to as "Student Records").

28. Plaintiff's immediate supervisor at the time of her hiring was Tyra Thompson, and the Registrar of Student Records was Rita Jerman.

29. At all relevant times, Paula Roberts was effectively Plaintiff's de facto supervisor in some capacity, official or otherwise.

30. Under Tyra Thompson, Plaintiff worked with Wake Tech with very little incident for approximately five years, maintaining an excellent work record and incurring no or minimal disciplinary warnings for her attendance and performance.

31. In 2008, Rosemary Kelly took over the duties of Registrar in Student Records.

32. In or about July 2010, Ms. Roberts took over the duties of Plaintiff's immediate supervisor in an official capacity.

**Wake Tech Failed to Reasonably Accommodate Plaintiff with a Window Seat**

33. In approximately July 2009, Plaintiff became aware that Student Records would be moving locations into a newly-remodeled floor of a different building.

34. This floor had several desks which were located near windows, affording the occupants of those desks exposure to sunlight throughout the day.

35. In June 2010, Plaintiff spoke with Ms. Roberts requesting a window seat in the new offices as a reasonable accommodation for her fibromyalgia.

36. Ms. Roberts told Plaintiff that it was unlikely she would receive a window seat, as those would be assigned based on seniority.

37. Ms. Roberts told Plaintiff that she would need to request a window seat through Ms. Kelly if the request was based on a medical reason.

38. Plaintiff then requested the seat from Ms. Kelly, who informed Plaintiff that she would have to review the rules.

39. Ms. Kelly further asked Plaintiff to supply information from her doctor which would show that this was a necessary accommodation, which Plaintiff did.

40. Ms. Kelly denied the window seat to Plaintiff on the basis of seniority.

41. Upon this denial, Plaintiff went to the office of Benita Clark, the director of Human Resources, to check on the rules regarding assignment of window seats and reasonable accommodations.

42. Ms. Clark told Plaintiff she would not receive a window seat, refusing to look at Plaintiff's medical information before making the determination.

43. Plaintiff then sent an email to Gayle Greene, the Vice President of Human Resources, explaining her medical situation and requesting the window seat.

44. Ms. Greene contacted Ms. Clark, who sent an email to Plaintiff requesting Plaintiff's presence for a discussion regarding the window seat.

45. Plaintiff attended this meeting with Ms. Clark and Ms. Thompson, who again denied Plaintiff the window seat on the basis of seniority.

46. Plaintiff then sent another email to Ms. Greene expressing frustration at the denial of this accommodation.

47. Ms. Greene stated she would investigate further and have Ms. Clark contact Plaintiff with her findings.

48. Ms. Clark informed Plaintiff that Wake Tech would prefer making the accommodation with a UV lamp, asking Plaintiff to get her doctor's note changed to reflect a lamp as an adequate accommodation.

49. Plaintiff, against her wishes and best interests, instructed her physician to alter the recommendation to comply with Ms. Clark's request.

50. This request was also denied.

51. In September 2010, Plaintiff observed that temporary employees had been placed in the window seats.

52. Wake Tech's failure to accommodate Plaintiff's request for a window seat, therefore, was not based on their stated reason of seniority, but on an arbitrary refusal to grant Plaintiff this reasonable accommodation.

53. Plaintiff also requested the ability to occasionally take her laptop to a storage area with window exposure to do her work.

54. This request was denied by Ms. Kelly.

55. In approximately October 2010, Plaintiff was presented with a UV lamp by Ms. Kelly and Ms. Roberts.

**Wake Tech's Change of Tardiness Policy was an Undue Hardship to Plaintiff**

56. Wake Tech altered its policy toward tardiness, requiring updates every two hours from Plaintiff to inform her supervisor of her status.

57. This change of policy was an undue hardship on Plaintiff, as she was frequently fatigued, in extreme pain, or heavily medicated. Nevertheless, Plaintiff complied to the best of her ability.

**Wake Tech Failed to Reasonably Accommodate Plaintiff with an Assigned Parking Space**

58. In approximately November 2010, Plaintiff spoke with Ms. Roberts to request an assigned parking space near the building in which she worked because it was difficult for her to walk to her building from the normal parking lot, which frequently did not have space available.

59. Ms. Roberts denied the request, stating that she would not give out an assigned parking space based on disability.

60. Plaintiff made the request for an assigned parking space to Ms. Kelly, who told Plaintiff to speak with Human Resources.

61. Plaintiff made the request to Gwen Underwood, the benefits counselor in Human Resources.

62. Ms. Underwood told Plaintiff that Wake Tech Security was responsible for assigning parking spaces and that Plaintiff would need to speak with that office to receive a space.

63. Plaintiff filled out an online form to contact Steve Gregory in Wake Tech Security and never received a response.

64. Plaintiff repeated her request multiple times to Ms. Underwood and Ms. Kelly and was denied each time.

65. On Plaintiff's date of termination, approximately one year after her initial request, Plaintiff was granted an assigned parking space.

## General Discrimination while under Paula Roberts

66. When Ms. Roberts began Plaintiff's immediate supervisor, Plaintiff began receiving frequent write-ups for various issues including tardiness, sleeping at her desk during breaks, attitude, and other matters.

67. Plaintiff's annual performance review score, which was exceptional prior to Ms. Roberts' assuming the role of her official supervisor, dropped dramatically and without good cause while working under Ms. Roberts.

68. Wake Tech placed Plaintiff on several Performance Improvement Plans (hereinafter, "PIP") in association with these write-ups.

69. Many of these write-ups were discriminatory and in violation of the Americans with Disabilities Act, Plaintiff's Family Medical Leave and established accommodations.

70. These write-ups were pretextual and given with the intention of inflicting emotional distress upon Plaintiff, establishing a basis for terminating Plaintiff, and/or forcing Plaintiff to resign.

### *Specific Example: Plaintiff Issued a Write-Up for Desk Organization, a Coping Mechanism*

71. On or about February 8, 2011, Plaintiff received a write-up from Ms. Roberts for having a desk space which was not organized according to Ms. Roberts' standards.

72. This organization was a compensatory technique for Plaintiff which enabled her to work more efficiently and without distress.

73. Plaintiff was forced to change the organization of her desk against her wishes and over her objections.

### *Specific Example: Plaintiff Written Up for Time in Hospital despite Proper Notification*

74. On July 13, 2011, Plaintiff began experiencing extreme pain at work and believed it to be the product of a kidney stone. Plaintiff requested to leave work and was allowed to do so.

75. On July 14, 2011, Plaintiff was unable to attend work because she was still in the hospital for a condition which was diagnosed two days later to be the combination of several medical conditions, including abnormal kidney function.

76. Plaintiff attempted to contact Ms. Roberts by telephone and was unable to reach her. Plaintiff followed these calls up with a series of emails to Ms. Roberts informing her that she would be unable to work that day.

77. Plaintiff notified Ms. Roberts that she was also unable to work on the following day, Friday, July 15.

78. On July 16, Plaintiff was discharged from the hospital.

79. On July 17, Plaintiff was admitted to another hospital. Plaintiff called Ms. Roberts and left a message that she would be unable to work on July 18.

80. On July 18, Plaintiff contacted Ms. Roberts notifying her of her extended hospital stay. Plaintiff's doctor sent a note confirming this to Ms. Roberts via fax.

81. On July 20, Plaintiff returned to work. At 5:00PM, Plaintiff was summoned to Ms. Kelly's office and issued another write-up admonishing Plaintiff for her absences and claiming a failure to notify properly.

### *Specific Example: Paula Roberts Photographed Plaintiff while Plaintiff in Medical Distress with the Intention of Using Photograph against Plaintiff*

82. On July 27, 2011, Plaintiff began to feel ill and disoriented due to vertigo.

83. Ms. Roberts informed Plaintiff that she looked ill and told Plaintiff to sit down.

84. Shortly thereafter, while attempting to file papers, Plaintiff was overcome by a wave of vertigo and leaned against a filing cabinet with her eyes closed, in obvious distress.

85. While Plaintiff was in this position, Ms. Roberts, instead of offering assistance, took a picture of Plaintiff with the intent of using the picture against Plaintiff in a later write-up.

86. Ms. Roberts hastily proceeded to a room wherein a meeting of managers was taking place in order to show the picture to them.

87. Plaintiff then made her way to another room, in distress obvious enough that a co-worker called security, who in turn called for an ambulance to transport Plaintiff to a hospital.

### **Defendant Issued Retaliatory Write-Ups and Imposed Retaliatory Disciplinary Measures against Plaintiff for Opposing Discrimination**

88. On August 8, 2011, at 3:03PM, Plaintiff's counsel spoke with the assistant to the General Counsel at Wake Tech (hereinafter, "the Assistant").

89. Plaintiff's counsel requested a mailing address for the General Counsel and informed the Assistant that he was requesting the information for the purpose of sending a

draft of an EEOC complaint to the General Counsel with the hopes of resolving the maters presented in this Complaint amicably.

90. This was the first notification Wake Tech was given regarding possible legal action for discrimination suffered by Plaintiff.

91. Within minutes of this call, Plaintiff observed a group of her supervisors, including Ms. Roberts, arranging an impromptu meeting.

92. At approximately 3:35PM on the same day, Plaintiff was called into a meeting with her supervisors where she was issued a disciplinary write-up and placed in a probationary period.

93. This write-up was pretextual, its elements largely fabricated or discriminatory, and issued in retaliation for Plaintiff's steps toward legal action against Wake Tech in opposition of its discrimination against her, as prohibited by 42 U.S.C. § 12203.

94. Plaintiff enlisted the assistance of a job coach, Suerontinette Parker, to monitor her work and suggest improvements which would enable her to be a better employee.

95. Ms. Parker found Plaintiff's performance to be satisfactory overall, and relayed such information to Plaintiff's superiors.

96. At the end of Plaintiff's 30-day probation, Plaintiff's probation was arbitrarily extended an additional 30 days, despite language in the initial notice of probation which clearly stated that she would be taken off probation after 30 days if there were no further incidents.

97. Upon receiving notice of this 30-day extension, Plaintiff filed a grievance with Wake Tech complaining of Ms. Roberts' actions of issuing continuous pretextual and

discriminatory write-ups, and Wake Tech's actions of extending Plaintiff's probation arbitrarily and refusing her reassignment requests on the basis of Plaintiff's probationary status.

**Defendant Failed to Reasonably Accommodate Plaintiff with a Job Reassignment**

98.	In late 2010, Plaintiff wrote to Ms. Clark requesting reassignment to a similar position in Wake Tech in a different department where she may receive the accommodations she required, as she could not do so with her current supervisors' discriminatory policies and treatment.

99.	Plaintiff was informed that Wake Tech does not transfer employees between departments, but that employees must apply and compete with all other applicants for any available position.

100.	After receiving her initial notice of probation, Plaintiff again requested a reassignment to a different department for the same reasons.

101.	Plaintiff was denied this this reassignment on the basis of her probationary status.

102.	This extension was continued retaliation for Plaintiff's continued opposition of the discriminatory practices of Wake Tech, as prohibited by 42 U.S.C. § 12203.

**Plaintiff Terminated in Retaliation for Continued Opposition to Discrimination**

103.	On or about September 20, 2011, Plaintiff was terminated from her position with Wake Tech.

104.	This termination was retaliatory for Plaintiff's continued opposition of the discriminatory practices of Wake Tech, as prohibited by 42 U.S.C. § 12203.

### Plaintiff's Injuries as a Result of Defendant's Actions

105. As a result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered significant emotional distress and physical injury. A non-exclusive list of these injuries includes:

    a. Plaintiff has developed depression and now requires an anti-depressant prescription.

    b. Plaintiff has begun experiencing significant dysfunction in her marriage and family life, which has led to her arrest on one occasion.

    c. Plaintiff has experienced difficulty providing her family with even the bare essentials and has been forced to resort to food banks as a supplement, causing her a great deal of shame and distress.

    d. Plaintiff has experienced extreme stress which, while damaging in and of itself, has also exacerbated Plaintiff's physical symptoms.

106. Plaintiff has experienced significant lost income due to her unemployment. As a result, her home is now in foreclosure and prior to the resolution of this matter, it is likely that she will lose both her home and her car.

107. Defendant's termination of Plaintiff caused significant pecuniary injury in the form of lost benefits, which include, but are not limited to, insurance benefits, retirement plan funds, and longevity-based benefits toward which Plaintiff was working.

### FOR A FIRST CAUSE OF ACTION
### Employment Discrimination: 42 U.S.C. § 12112

108. Plaintiff is a person with a disability, within the meaning of 42 U.S.C. § 12112, who was employed by Wake Tech.

109. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

110. The term "discriminate against a qualified individual on the basis of disability" includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

111. The term "reasonable accommodation" may include—
   a. making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
   b. job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

112. As set forth above, Defendant repeatedly discriminated against Plaintiff through write-ups and disciplinary action and failed to provide reasonable accommodation to Plaintiff.

113. Many of Defendants' actions are discriminatory on their face, while discriminatory intent may be inferred from other actions by the nature and multiplicity of such actions when Defendant's conduct is taken as a whole.

114. Plaintiff has suffered harm as outlined above as a result of Defendants' actions.

## FOR A SECOND CAUSE OF ACTION
### Retaliation: 42 U.S.C. § 12203

115. Plaintiff opposed discrimination as prohibited by 42 U.S.C. § 12112 and initiated charges with the EEOC under the same rule.

116. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by Chapter 42 of the United States Code or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Chapter 42 of the United States Code.

117. As set forth above, Defendant discriminated against Plaintiff for Plaintiff's opposition and initiation of charges on multiple occasions.

118. Plaintiff has suffered harm as set forth above as a result of Defendant's actions.

## FOR A THIRD CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

119. This cause of action is brought under North Carolina state law and brought before this Court under 28 U.S.C. § 1367.

120. Defendant engaged in extreme and outrageous conduct toward Plaintiff by issuing an excessive number of write-ups, disciplinary procedures, and fostering an extremely hostile work environment in which it forced Plaintiff to remain.

121. As can be shown directly or inferred by the nature and multiplicity of its actions, Defendant acted with the intent of causing extreme emotional distress to Plaintiff.

122. Defendant's actions did in fact cause severe emotional distress to Plaintiff.

## DEMAND FOR TRIAL BY JURY

123.   Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiff prays that this Court:

1.   Issue judgment against the Defendant and in favor of the Plaintiff on all causes of action contained herein.

2.   Direct Defendant to pay damages, including punitive damages, to Plaintiff in an amount to be determined at trial.

3.   Order Defendant to pay statutory attorney's fees and reimburse Plaintiff for costs.

4.   Award such other and further relief as the Court deems just and proper.

Respectfully submitted,
**/s/ Craig Hensel**
*Attorney for Plaintiff*
NC State Bar No. 40852
**The Law Office of Craig Hensel**
4642 West Market Street #305
Greensboro, North Carolina 27407
Phone: (336) 891-0004
Fax: (866) 496-5803
craig.hensel@hensellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, I electronically filed the foregoing **Complaint and Demand for Trial by Jury** with the Clerk of Court using the CM/ECF system. Upon receipt of the Civil Summons to be signed by the Clerk of Court, I will serve both documents on the following recipient, said person being the registered process agent for the Defendant, via United States Mail, Certified, Return Receipt Requested.

> Clay Hines
> General Counsel
> Wake Technical Community College
> 9101 Fayetteville Rd.
> Raleigh, NC 27603-5696
> cthines@waketech.edu
> *Counsel for Defendant*

> **/s/ Craig Hensel**
> *Attorney for Plaintiff*
> NC State Bar No. 40852
> **The Law Office of Craig Hensel**
> 4642 West Market Street #305
> Greensboro, North Carolina 27407
> Phone: (336) 891-0004
> Fax: (866) 496-5803
> craig.hensel@hensellaw.com