IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:12-cv-000157-BO

| | | |
|---|---|---|
| CAROLYN PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ANSWER TO COMPLAINT** |
| v. | ) | |
| | ) | |
| WAKE TECHNICAL COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

This Answer to Plaintiff's Complaint is submitted by and through counsel, on behalf of

Defendant Trustees of Wake Technical Community College.


**FIRST DEFENSE**
**(Motion to Dismiss- 12(b)(6))**

Plaintiff's claims under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112

and Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203 should be dismissed

pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil

Procedure for lack of jurisdiction and defective process and service of process, and pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which

relief may be granted. Plaintiff's state law claim for intentional infliction of emotional distress

should be dismissed pursuant to Rule 12 (b)(6) for failure to state a claim. Plaintiff's claim for

punitive damages should also be dismissed as a matter of law.

## SECOND DEFENSE
### INTRODUCTION

As a further defense, Defendant Trustees of Wake Technical Community College (WTCC) responds to the enumerated allegations of the Complaint as follows:

1. The allegations in Paragraph 1 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

2. It is denied that WTCC failed to provide accommodations to, discriminated against, or retaliated against Plaintiff. It is further denied that Plaintiff sustained any physical or economic injury or other damages as a result of any conduct, actions or omission on the part of WTCC or any of WTCC's officers, agents or employees. The remaining allegations in Paragraph 2 are conclusions of law to which no response is required.

3. The allegations in Paragraph 3 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

4. The allegations in Paragraph 4 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

### PARTIES, JURISICTION, AND VENUE

5. The allegations in Paragraph 5 are admitted upon information and belief.

6. Admitted.

7. The allegations in Paragraph 7 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

8. The allegations in Paragraph 8 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

9. The allegations in Paragraph 9 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

Case 5:12-cv-00157-BO   Document 11   Filed 05/21/12   Page 2 of 24

10. It is denied that Plaintiff timely filed her Charge with the Equal Employment Opportunity Commission, and it is denied that she filed the Charge while still employed with WTCC. It is admitted upon information and belief that Plaintiff was issued a Notice of Right to Sue letter from the Equal Employment Opportunity Commission on December 21, 2011. The contents of the Notice of the Right to Sue letter speak for themselves.

11. WTCC lacks sufficient information as to the truth or falsity of the allegations alleged in Paragraph 11 and these allegations are therefore denied.

12. It is admitted that Plaintiff filed a complaint in this action on March 23, 2012. It is denied that she exhausted her administrative remedies prior to filing the Complaint. The remaining allegations in Paragraph 12 are conclusions of law to which no response is required.

## FACTUAL ALLEGATIONS
### Plaintiff's Disability and Reasonable Accommodations

13. It is admitted that Plaintiff has indicated on paperwork on file with WTCC that her date of birth is December 19, 1967. It is also admitted upon information and belief that Plaintiff received a diagnosis from one or more physicians indicating that she has or may have a medical condition known as fibromyalgia. WTCC lacks sufficient information as to the symptoms of Plaintiff's medical diagnosis sufficient to form a belief as to the truth or falsity of those allegations, and they are therefore denied.

14. It is admitted that Plaintiff provided documentation to WTCC at one point in time from her physician stating that she suffers from Vitamin D deficiency. WTCC lacks sufficient information as to the other medical diagnoses listed in Paragraph 14 to form a belief as to the truth or falsity of those allegations, and they are therefore denied.

3

15. It is admitted that Plaintiff provided documentation from her physician at various times, including documentation from dates before she was hired, stating that she required a reduced work schedule, a KBD D/UV Vitamin D lamp, a laptop, and an orthopedic chair. Most of this documentation did not include any stated medical reason for the requested accommodation(s). Except as admitted herein, the allegations in Paragraph 15 are denied.

16. It is admitted upon information and belief that Plaintiff attended some appointments with her physician while employed with WTCC. Except as admitted herein, the allegations in Paragraph 16 are denied.

17. WTCC lacks sufficient information as to the truth or falsity of the allegations alleged in Paragraph 17 and these allegations are therefore denied.

## Plaintiff's Basic Employment History with Wake Tech

18. It is admitted upon information and belief that Plaintiff signed a contract on March 6, 2006, to work as a full time employee at WTCC. It is also admitted that Plaintiff's first day of work for WTCC was March 13, 2006. Except as specifically admitted herein, the allegations in Paragraph 18 are denied.

19. Denied.

20. It is admitted that Plaintiff was terminated from her position with WTCC effective September 20, 2011.

21. It is admitted that Plaintiff took intermittent leave under the FMLA during her tenure with WTCC. Except as admitted herein, the allegations in Paragraph 21 are denied.

22. It is admitted that Plaintiff was given an adjusted work schedule to accommodate her fibromyalgia and her class schedule at WTCC. It is further admitted that even with the

4

adjusted work schedule, Plaintiff frequently arrived to work late and took days off without warning or explanation. Except as admitted herein, the allegations in Paragraph 22 are denied.

23. It is admitted that, on occasion, Plaintiff would make her supervisors aware that she would be late or absent from work. Except as admitted herein, the allegations in Paragraph 23 are denied.

24. It is admitted that, on occasion, Plaintiff would make her supervisors aware that she would be late or absent from work. WTCC lacks sufficient information as to the truth or falsity of the remaining allegations alleged in Paragraph 24, and these allegations are therefore denied.

25. It is admitted that, on occasion, Plaintiff would make her supervisors aware that she would be late or absent from work. WTCC lacks sufficient information as to the truth or falsity of the remaining allegations alleged in Paragraph 25, and these allegations are therefore denied.

26. It is admitted that, on occasion, Plaintiff would make her supervisors aware that she would be late or absent from work. WTCC lacks sufficient information as to the truth or falsity of the remaining allegations alleged in Paragraph 26, and these allegations are therefore denied.

27. It is admitted that Plaintiff's position at the time of hire was Office Assistant-Curriculum Records, a clerical position in the Registration and Student Records Division. By the date of her termination, Plaintiff's position had been renamed as Records Assistant I, a clerical position in the Enrollment and Records Services division in the Student Records department. Except as admitted herein, the allegations in Paragraph 27 are denied.

5

28. Admitted.

29. It is admitted that Paula Roberts (Ms. Roberts) was promoted to Student Records Coordinator in April 2010, and assumed the direct supervision of the Records Assistants I, including Plaintiff. It is also admitted that Ms. Roberts provided periodic support to Plaintiff to assist her in completing her job functions prior to becoming her direct supervisor. Except as admitted herein, the allegations in Paragraph 29 are denied.

30. It is admitted that Plaintiff worked under Tyra Thompson (Ms. Thompson) for a period of time. Except as admitted herein, the allegations in Paragraph 30 are denied.

31. Admitted.

32. It is admitted that Ms. Roberts was promoted to Student Records Coordinator in April 2010 and assumed the direct supervision of the Records Assistants I, including Plaintiff. Except as admitted herein, the allegations in Paragraph 32 are denied.

33. WTCC lacks sufficient information as to when Plaintiff became aware of the fact that the Student Records department at WTCC would be moved to a new location, and thus, the allegations in Paragraph 33 are denied.

34. It is admitted that the Student Records department currently occupies an office suite on the second floor of the Student Services building on the WTCC campus, and two of the five cubicles in this suite are located adjacent to tinted windows with blind treatments. It is also admitted that a third cubicle is located directly across from a window. Except as admitted herein, the allegations in Paragraph 34 are denied.

35. It is admitted that Ms. Roberts and Dr. Rosemary Kelly (Dr. Kelly) assigned cubicle spaces in the new location in a configuration that mirrored the seating in the old office space. It is admitted that after Ms. Roberts informed her department of the planned

6

seating arrangement in the new office space, Plaintiff verbally told Ms. Roberts in May or June of 2010 that she wanted to be changed to a window seat because of her alleged Vitamin D deficiency, even though she did not have a window seat in the old office space. It is also admitted that this occurred prior to the actual move into the new office space. Except as admitted herein, the allegations in Paragraph 35 are denied.

36. It is admitted that Ms. Roberts verbally explained to Plaintiff that she and Dr. Kelly had already assigned the two cubicles adjacent to windows to the two most senior members of the department. Except as admitted herein, the allegations in Paragraph 36 are denied.

37. It is admitted that Ms. Roberts suggested that Plaintiff talk to Dr. Kelly about her concerns with the seating. Except as admitted herein, the allegations in Paragraph 37 are denied.

38. It is admitted that Plaintiff communicated to Dr. Kelly that she wanted a window seat in the new office space because of an alleged Vitamin D deficiency and fibromyalgia. It is admitted that Dr. Kelly asked Plaintiff to provide documentation to show this was an appropriate accommodation for her condition. It is also admitted that Dr. Kelly reassigned Plaintiff to the cubicle that had been assigned to Ms. Roberts, which was directly across from a window, in order to reasonably accommodate Plaintiff's request. Dr. Kelly assigned Ms. Roberts to the cubicle that had been assigned to Plaintiff and which was not near any windows. Except as admitted herein, the allegations in Paragraph 38 are denied.

39. Despite Dr. Kelly's reassignment of Plaintiff to a cubicle directly across from and very close to a window (where Plaintiff was seated from the date of the office move in August 2010 until she was discharged in September 2011), Plaintiff remained

dissatisfied.  It is admitted that Plaintiff verbally communicated to Dr. Kelly that she
wanted a window seat in the new office space because of an alleged Vitamin D
deficiency and fibromyalgia, and it is admitted that Dr. Kelly asked Plaintiff to provide
documentation to show this was an appropriate accommodation for her condition. It is
further admitted that Plaintiff supplied Dr. Kelly a letter from a doctor dated July 26,
2010, stating that it would be beneficial for Plaintiff to have a KBD D/UV Vitamin D
lamp.  The letter did not mention that Plaintiff needed a window seat.  WTCC was never
provided with a letter from any medical professional stating that Plaintiff needed a
window seat.  Except as admitted herein, the allegations in Paragraph 39 are denied.

40. It is admitted that Dr. Kelly supported the previous planned assignment of the window
seats adjacent to the window to the most senior members of the department.  However,
the plan remained to seat Plaintiff directly across from the window, and WTCC agreed
to have the KBD D/UV Vitamin D lamp purchased for Plaintiff in response to Plaintiff's
doctor's note regarding the need for such a lamp. Except as admitted herein, the
allegations in Paragraph 40 are denied.

41. It is admitted that Plaintiff then made a verbal request to Benita Clark (Ms. Clark), the
director of Human Resources, for a window seat adjacent to the window in the new
space. Except as admitted herein, the allegations in Paragraph 41 are denied.

42. Upon information and belief, WTCC never received information from Plaintiff's doctor
requesting that Plaintiff receive a window seat.  However, the plan remained to seat
Plaintiff directly across from the window, and WTCC agreed to have the KBD D/UV
Vitamin D lamp purchased for Plaintiff in response to Plaintiff's doctor's note regarding

the need for such a lamp.  Except as admitted herein, the allegations in Paragraph 42 are denied.

43. It is admitted that Plaintiff sent emails to Gayle Greene complaining about how Ms. Clark handled Plaintiff's request for a window seat.  Except as admitted herein, the allegations in Paragraph 43 are denied.

44. It is admitted that Ms. Clark requested a meeting with Plaintiff to discuss the window seat issue. Except as admitted herein, the allegations in Paragraph 44 are denied.

45. It is admitted that Ms. Clark and Dr. Kelly met with Plaintiff to explain that the Student Records department had already agreed to assign cubicle space based on seniority. However, the plan remained to seat Plaintiff directly across from the window, and WTCC agreed to have the KBD D/UV Vitamin D lamp purchased for Plaintiff in response to Plaintiff's doctor's note regarding the need for such a lamp. Except as admitted herein, the allegations in Paragraph 45 are denied.

46. It is admitted that Plaintiff sent emails to Gayle Greene complaining about how Ms. Clark handled Plaintiff's request for a window seat.  Except as admitted herein, the allegations in Paragraph 46 are denied.

47. It is admitted that Gayle Greene told Plaintiff that Ms. Clark would be in touch about her concerns with her seating.  Except as admitted herein, the allegations in Paragraph 47 are denied.

48. Denied.

49. It is admitted that Plaintiff (previously) presented a doctor's note stating that it would be beneficial for Plaintiff to have a KBD D/UV Vitamin D lamp. Except as admitted herein, the allegations in Paragraph 49 are denied.

9

50. The allegations in Paragraph 50 are denied based on ambiguity. It is unclear what request Plaintiff is referring to.

51. WTCC lacks sufficient information as to the truth or falsity of the allegations alleged in Paragraph 51, and these allegations are therefore denied.

52. It is admitted that Plaintiff did in fact receive a seat very near a window and she also received her doctor's requested accommodation of a UV lamp. Plaintiff never provided any documentation from a physician in support of her request for a seat near a window. The two ladies sitting adjacent to the window were members of the Student Records department with the most years of service, and they did receive those seat assignments for that reason and no other. Except as admitted herein, the allegations in Paragraph 52 are denied.

53. It is admitted that Plaintiff wanted to move her work space into the Student Records department storage room, which was used for storage and where there were no work spaces. Except as admitted herein, the allegations in Paragraph 53 are denied.

54. It is admitted that Dr. Kelly denied this request based on concerns for Plaintiff's safety.

55. It is admitted that Plaintiff was provided by WTCC with a KBD D/UV Vitamin D lamp, per her request and her doctor's documentation.

56. It is admitted that as an addendum to her Performance Improvement Plan on February 14, 2011, Plaintiff agreed that if she was going to be late to work that she notify her supervisor at least 30 minutes before she was scheduled to arrive that she would be late, and let her supervisor know what time she thought she would be there. If Plaintiff was unable to make it into work within the set time frame she was asked to call in every couple of hours and alert her supervisor of any changes and when she might report to

work. This procedure was established to assist Plaintiff's supervisors with managing time-sensitive workflow within the department. Except as admitted herein, the allegations in Paragraph 56 are denied.

57. It is admitted that Plaintiff occasionally checked in with her supervisors when she was out of work. Except as admitted herein, the allegations in Paragraph 57 are denied.

58. It is admitted that the Plaintiff informally mentioned to Ms. Roberts on occasion that she wanted a reserved parking space that was solely for her. Plaintiff was issued the appropriate decals to grant her access to any handicapped parking space in the WTCC parking lot. It is admitted that WTCC had the number of handicap parking spaces available in the parking lot as required by law. Upon information and belief, Plaintiff explained to Ms. Roberts that because Plaintiff often arrived to work late, she sometimes could not find an available handicapped parking space. Ms. Roberts did not have authority to assign Plaintiff a reserved parking space. Except as admitted herein, the allegations in Paragraph 58 are denied.

59. Denied.

60. Admitted

61. Admitted.

62. Admitted.

63. Upon information and belief, no online form exists or ever existed to contact WTCC Security department about a request for an assigned parking space. Defendant lacks sufficient information as the truth or falsity of the allegations in Paragraph 63, and these allegations are therefore denied.

11

64. It is admitted that Plaintiff informally mentioned to Dr. Kelly and Ms. Underwood on more than one occasion her desire for a reserved parking space. Except as admitted herein, the allegations in Paragraph 64 are denied.

65. It is admitted that WTCC installed a reserved parking sign on an assigned space directly in front of the Student Services building for Plaintiff's use. It is denied that it was given to her on the date she was terminated. Except as admitted herein, the allegations in Paragraph 65 are denied.

66. It is admitted that Plaintiff was written up by Ms. Roberts and others for various noncompliance and job performance issues during the time she was employed by WTCC. Except as admitted herein, the allegations in Paragraph 66 are denied.

67. It is admitted that Plaintiff's annual performance score declined during the time she was employed by WTCC. Except as admitted herein, the allegations in Paragraph 67 are denied.

68. It is admitted that Plaintiff was placed on Performance Improvement Plans during her employment with WTCC. Except as admitted herein, the allegations in Paragraph 68 are denied.

69. Denied.

70. Denied.

71. It is admitted that Plaintiff was warned by Ms. Thompson and Ms. Roberts, verbally and in writing, throughout 2011 about her organization/filing and need for co-workers to be able to find paperwork in her absence. Except as admitted herein, the allegations in Paragraph 71 are denied.

72. WTCC lacks sufficient information as to the truth or falsity of the allegations alleged in Paragraph 72, and these allegations are therefore denied.

73. It is admitted that Plaintiff was warned by Ms. Thompson and Ms. Roberts, verbally and in writing, throughout 2011 about her organization/filing and need for co-workers to be able to find paperwork in her absence. Except as admitted herein, the allegations in Paragraph 73 are denied.

74. It is admitted that Plaintiff informed Ms. Roberts she was not feeling well and left work early on July 13, 2011. WTCC lacks sufficient information as to the truth or falsity of the remaining allegations alleged in Paragraph 74, and these allegations are therefore denied.

75. It is admitted that Plaintiff did not attend work on July 14, 2011. WTCC lacks sufficient information as to the truth or falsity of the remaining allegations alleged in Paragraph 75, and these allegations are therefore denied.

76. It is admitted that Ms. Roberts received a voicemail from Plaintiff at 12:09 pm and an email from Plaintiff at 12:30 pm on Thursday, July 14, 2011, stating she would not be at work that day. Except as admitted herein, the allegations in Paragraph 76 are denied.

77. It is further admitted that Ms. Roberts received a second email from Plaintiff approximately thirty minutes later, at 1:01 pm on Thursday, July 14, 2011, stating she would not return to work until Monday, July 18, 2011. Except as admitted herein, the allegations in Paragraph 77 are denied.

78. WTCC lacks sufficient knowledge of Plaintiff's medical history to form a belief as to the truth or falsity of the allegations in Paragraph 78, and these allegations are therefore denied.

Case 5:12-cv-00157-BO   Document 11   Filed 05/21/12   Page 13 of 24

79. It is admitted that Plaintiff left Ms. Roberts a voicemail on the evening of Sunday, July 17 that she would not be coming to work the next day, July 18, 2011 as she had previously stated she would be doing. WTCC lacks sufficient knowledge of Plaintiff's medical history concerning her hospital stays to form a belief as to the truth or falsity of these allegations, and the remaining allegations in Paragraph 79 are therefore denied.

80. It is admitted that Ms. Roberts was aware that Plaintiff was ill and would not attend work on July 18, 2011. Except as admitted herein, the allegations in Paragraph 80 are denied.

81. It is admitted the Plaintiff returned to work on July 20, 2011 after an extended absence. It is admitted that Plaintiff did not come to work on July 19, 2011. It is also admitted that Dr. Kelly and Ms. Roberts met with Plaintiff on July 20, 2011 to discuss a pattern of unsatisfactory work performance, unprofessional behavior, absenteeism, and tardiness spanning from a period of time from February 2011 through July 14, 2011. It is also admitted that the WTCC's concerns were well documented in a probation notice to Plaintiff, which had been previously discussed with her, including an addendum which noted that Plaintiff was observed sleeping at her desk immediately prior to the meeting with her supervisors on July 20, 2011. The probation notice was first recommended-- in writing-- on June 28, 2011 by Ms. Roberts, before the July 20 meeting. Except as admitted herein, the allegations in Paragraph 81 are denied.

82. It is admitted that Ms. Roberts observed Plaintiff's appearance and behavior to indicate she was in some kind of distress on July 27, 2011. It is also admitted that Ms. Roberts and Plaintiff's coworkers observed her engaging in irrational and erratic behavior that

appeared to indicate she was under the influence of a substance. Except as admitted herein, the allegations in Paragraph 82 are denied.

83. It is admitted that Ms. Roberts offered assistance to Plaintiff and informed Plaintiff that she looked ill. It is also admitted that after Ms. Roberts guided Plaintiff to her chair to sit down, Plaintiff again stood up and began to wander around the office space.

84. It is admitted that Ms. Roberts and Plaintiff's other coworkers observed her slumped against a filing cabinet on July 27, 2011. WTCC lacks sufficient information as to the truth or falsity of the remaining allegations regarding how Plaintiff felt on July 27, 2011, and these allegations are therefore denied.

85. Denied.

86. It is admitted upon information and belief that Ms. Roberts asked Ms. Thompson to take a picture of Plaintiff's behavior to document the WTCC's concerns on July 27, 2011 and consulted with WTCC's Human Resources department about the situation regarding Plaintiff's behavior. Except as admitted herein, the allegations in Paragraph 86 are denied.

87. It is admitted that Ms. Roberts instructed another employee to call campus security. It is also admitted that campus security responded to this call and assessed Plaintiff's needs on July 27, 2011, and Plaintiff requested that an ambulance be called. It is further admitted that Plaintiff left work via ambulance that day. It is admitted that ambulance personnel questioned Plaintiff if she had taken medication that day, and Plaintiff admitted in the presence of Ms. Roberts that she had taken muscle relaxers. Except as admitted herein, the allegations in Paragraph 87 are denied.

88. It is admitted upon information and belief that Plaintiff's counsel left a message with a paralegal for Ms. Hines, General Counsel at WTCC, on the afternoon of August 8, 2011. Mr. Hines, who was not on campus that day, was not given that message until August 9, 2011. Except as admitted herein, the allegations in Paragraph 88 are denied.

89. It is admitted that the purpose of Plaintiff's counsel's call was to request the name and address of a person to send a demand letter to on Plaintiff's behalf. Except as admitted herein, the allegations in Paragraph 89 are denied.

90. It is admitted upon information and belief this was the first contact Plaintiff's counsel made with the WTCC General Counsel's office. Except as admitted herein, the allegations in Paragraph 90 are denied.

91. It is admitted that Dr. Kelly and Ms. Roberts met with Plaintiff on August 8, 2011 to discuss several documented job performance incidents that had occurred during the previous two-week period. It is specifically denied that this meeting was in any way connected with the call from Plaintiff's counsel to Ms. Hines' office or that Dr. Kelly and Ms. Roberts (or any other of Plaintiff's supervisors) were aware of the call that afternoon. Except as admitted herein, the allegations in Paragraph 91 are denied.

92. It is admitted that Plaintiff received a Performance Improvement Plan on August 8, 2011 regarding her policy and procedure violations and unprofessional behavior. It is denied that Plaintiff was placed on probation that day- Plaintiff was already on probation through August 18, 2011. Except as admitted herein, the allegations in Paragraph 92 are denied.

93. Denied.

94. It is admitted that Plaintiff had two job coaches throughout her employment with WTCC, Leslie Enea and E.J. Parker. Except as admitted herein, the allegations in Paragraph 94 are denied.

95. Denied.

96. It is admitted that Plaintiff's probation period was extended an additional 30 days due to her continued performance issues and to give her more time to work with a career coach in the hopes that the one-on-one coaching would improve her performance. Except as admitted herein, the allegations in Paragraph 96 are denied.

97. It is admitted that Plaintiff filed a grievance with WTCC on September 16, 2011 when she learned she would not be taken off probation. Except as admitted herein, the allegations in Paragraph 97 are denied.

98. It is admitted that Plaintiff requested a reassignment from Ms. Clark at one point in time. Except as admitted herein, the allegations in Paragraph 98 are denied.

99. It is admitted that WTCC does not have a policy that allows for the transfer of existing WTCC employees between departments. Instead, employees that want to work in another department must apply for open positions and compete with others that apply. Except as admitted herein, the allegations in Paragraph 99 are denied.

100. It is admitted that during her probationary period, Plaintiff requested a transfer. Except as admitted herein, the allegations in Paragraph 100 are denied.

101. It is admitted that WTCC explained to Plaintiff that she would not be hired for another vacant position while she was on probationary status with WTCC due to concerns with her job performance. Except as admitted herein, the allegations in Paragraph 101 are denied.

102. Denied.

103. Admitted.

104. Denied.

105. It is denied that WTCC discriminated against or retaliated against Plaintiff. WTCC lacks sufficient information as to the truth or falsity of the allegations alleged in Paragraph 105 and its subparts regarding Plaintiff's medical and emotional condition, and these allegations are therefore denied.

106. WTCC lacks sufficient information as to the truth or falsity of the allegations alleged in Paragraph 106, and these allegations are therefore denied.

107. It is admitted that Plaintiff lost some employment benefits upon her termination. The remaining allegations in Paragraph 107 are conclusions of law to which no response to required. To the extent a response is required, the allegations are denied.

## FOR A FIRST CAUSE OF ACTION
### Employment Discrimination: 42 U.S.C. § 12112

108. It is admitted that Plaintiff was employed by WTCC. The remaining allegations in Paragraph 108 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

109. The allegations in Paragraph 109 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

110. The allegations in Paragraph 110 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

111. The allegations in Paragraph 111 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

18

112. Denied.

113. Denied.

114. Denied.

## FOR A SECOND CAUSE OF ACTION
### Retaliation: 42 U.S.C. § 12203

115. It is admitted that Plaintiff initiated charges with the EEOC.  The remaining allegations in Paragraph 115 are legal conclusions to which no response it required.  To the extent a response is required, the allegations are denied.

116. The allegations in Paragraph 116 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

117. Denied.

118. The allegations in Paragraph 118 are conclusions of law to which no response is required.  To the extent a response is required, the allegations are denied.

## FOR A THIRD CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

119. The allegations in Paragraph 119 are conclusions of law to which no response is required.  To the extent a response is required, the allegations are denied.

120. Denied.

121. Denied.

122. Denied.

## DEMAND FOR TRIAL BY JURY

123. The allegations in Paragraph 123 are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.


## PRAYER FOR RELIEF

The allegations are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.


### THIRD DEFENSE
### (Unclean Hands/Estoppel)

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and/or Estoppel.

### FOURTH DEFENSE
### (Failure to Mitigate)

WTCC pleads upon information and belief that the Plaintiff failed to exercise reasonable diligence and ordinary care to minimize her damages, and WTCC therefore pleads the doctrine of avoidable consequences and the defense of failure to mitigate damages in bar of Plaintiff's claims against the WTCC.


### FIFTH DEFENSE
### (Immunity)

WTCC pleads any and all applicable immunities to which it may be entitled, including, but not limited to, Eleventh Amendment immunity, sovereign immunity and governmental immunity, in bar of Plaintiffs' claims.

## SIXTH DEFENSE
### (No Proximate Cause)

WTCC's alleged conduct did not proximately cause Plaintiff any harm.

## SEVENTH DEFENSE
### (Failure to Exhaust Administrative Remedies)

Plaintiff failed to exhaust her administrative remedies with respect to her discrimination claim for any acts after September 2010, as she did not include this claim in her charge of discrimination filed with the Equal Employment Opportunity Commission. Plaintiff further failed to exhaust her administrative remedies by failing to comply with WTCC's grievance procedure.

## EIGHTH DEFENSE
### (Statute of Limitations, Statute of Repose)

WTCC pleads all applicable statutes of limitation and repose as a bar, in whole or in part, to recovery by Plaintiff. WTCC pleads Plaintiff's failure to timely file her EEOC complaint as a bar to her recovery.

## NINTH DEFENSE
### (Lack of jurisdiction)

Plaintiff's failure to exhaust administrative remedies and failure to timely file her EEOC complaint deprive this Court of subject matter jurisdiction over her discrimination claims. WTCC also pleads lack of personal jurisdiction due to Plaintiff's failure to properly name the "Trustees of Wake Technical Community College" as the defendant in this action, the body corporate and the entity responsible for defending suits against the WTCC.

## TENTH DEFENSE
### (No Punitive Damages)

As a matter of law, Plaintiff cannot obtain punitive damages against WTCC, a governmental entity.

## ELEVENTH DEFENSE

WTCC engaged in good faith efforts, in consultation with Plaintiff, to identify Plaintiff's medical impairment and any reasonable accommodations (if needed) supported by medical documentation. WTCC's good faith efforts bar Plaintiff's recovery of compensatory damages in this action.

## TWELTH DEFENSE

WTCC's actions were for legitimate, non-pretextual, non-discriminatory, and non-retaliatory reasons.

## ADDITIONAL DEFENSES

WTCC reserves the right to amend its Answer and to assert any additional defenses as the claims of Plaintiff are more fully disclosed and additional evidence is discovered during the course of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff's Complaint, WTCC prays for the following relief:

1. Each and every cause of action be dismissed with prejudice;

2. That Plaintiff have and recover nothing from WTCC;

3. That WTCC recovers its costs and expenses, including attorney's fees, to the extent permitted by applicable law; and

4.  That WTCC has such other relief as the Court deems just and proper.


Respectfully submitted, this the 21st day of May 2012.


                              THARRINGTON SMITH, L.L.P.


                              /s/ Benita N. Jones
                              _____
                              Kathleen Tanner Kennedy
                              NC State Bar No. 28113
                              Benita N. Jones
                              NC State Bar No. 40263
                              209 Fayetteville Street
                              Post Office Box 1151
                              Raleigh, North Carolina 28602-1151
                              Telephone: (919) 821-4711
                              Fax: (919) 829-1583
                              Email: kkennedy@tharringtonsmith.com
                                     bjones@tharringtonsmith.com
                              ATTORNEYS FOR DEFENDANT
                              WAKE TECHNICAL COMMUNITY COLLEGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Answer to Complaint** was filed using CM/ECF, which will send notification of such filing to the following:

Craig Hensel
4642 West Market Street, #305
Greensboro, NC 27407
craig.hensel@hensellaw.com
*Attorney for Plaintiff*

This the 21st day of May, 2012.

/s/ Benita N. Jones
_____

Kathleen Tanner Kennedy
NC State Bar No. 28113
Benita N. Jones
NC State Bar No. 61727
THARRINGTON SMITH, L.L.P.
209 Fayetteville Street
Post Office Box 1151
Raleigh, North Carolina 28602-1151
Telephone: (919) 821-4711
Fax: (919) 829-1583
Email: kkennedy@tharringtonsmith.com
bjones@tharringtonsmith.com
ATTORNEYS FOR DEFENDANT
WAKE TECHNICAL COMMUNITY COLLEGE

794207